**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
UNITED STATES OF AMERICA,          :
          :
          :       19 Cr. 880 (RMB)
      - against -          :
          :       **DECISION & ORDER**
HENRY PEREZ,          :
          :
       Defendant.          :
-------------------------------------------------------------x

The Court has reviewed the record herein, including without limitation: (1) Defendant

Henry Perez's Rule 35 motion, and reply, dated April 25, 2022, and May 18, 2022, respectively,

requesting that the Court "correct" his sentence imposed on April 12, 2022.  Defense counsel

argues that (i) "[n]umerous defendants who have been convicted in the Southern District of New

York of conduct similar, and in some cases identical, to Mr. Perez have received sentences many

orders of magnitude shorter than his.  It is respectfully submitted that it was clear error, the

standard required by Rule 35, for the Court to not take these other cases under sufficient

consideration when sentencing Mr. Perez."  See Mot. at 2.; and (ii) "the Court erred at sentencing

by inappropriately considering an unrelated victim impact letter concerning conduct not

connected to Mr. Perez as well as imposing an improper sentencing enhancement for Mr. Perez

based on the perceived complexity of this fraudulent scheme." Id. (emphasis omitted); (2) the

Government's response, dated May 11, 2022, opposing Defendant's motion and arguing that

"the Court lacks jurisdiction to consider the [m]otion", and that "even if the Court were to

consider the merits of the [m]otion, Perez's [] arguments are all baseless."  See Opp. at 1.  The

Court has also reviewed "previously unavailable letters for [the] Court's consideration in

evaluating [the Defendant's] true character" attached to the defense motion.  See Mot. at 15. **The**

Court denies Defendant's Rule 35 motion for the reasons set forth in this Decision and Order.[1]

I.   **Background**

On October 4, 2021, Defendant pled guilty to a conspiracy to commit wire fraud. See Plea Hr'g Tr.  Defendant pled guilty pursuant to a plea agreement, dated August 30, 2021 ("Plea Agreement").  Among other things, the plea agreement contained a stipulated guidelines range of 121 to 151 months of imprisonment; restitution in the amount of $539,654.96; and a waiver provision that stated in part: "It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 121 to 151 months' imprisonment."  See Plea Agreement at 2, 3, and 5.

On April 12, 2022, the Court sentenced Perez to 88 months imprisonment to be followed by 3 years of supervised release. See Apr. 12, 2022 Judgment.   The Court also ordered the Defendant to pay $539,654.96 restitution.  Id.  Defendant is currently serving his sentence, after having surrendered on or about June 13, 2022.

II.   **Legal Standard**

Fed. R. Crim. P. 35 (a) provides that "Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."

The time period set forth in Rule 35 is jurisdictional.  United States v. Abreu-Cabrera, 64 F.3d 67 (2d Cir. 1995).  "[A] district court lacks jurisdiction to correct a sentence after the

---

[1] Any arguments raised but not specifically included in this Decision and Order have been considered and rejected.

fourteen-day period set forth in Rule 35(a) has expired, even where the motion seeking relief is timely filed."  See United States v. Sarvestani, 297 F.R.D. 228, 229 (S.D.N.Y. 2014).

"Knowing and voluntary appellate waivers included in plea agreements must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of the defendants."  See United States v. Granik, 386 F.3d 404, 412 (2d Cir. 2004) (quoting United States v. Rosa, 123 F.3d 94, 97-98 (2d Cir. 1997)).

**III.   Analysis**

The Court has no jurisdiction to change the Defendant's sentence as requested.  Perez was sentenced on April 12, 2022.  "Since more than 14 days have passed since the Court's oral announcement of the sentence, the Court lacks jurisdiction to correct his sentence under Rule 35(a), even if the sentence was otherwise correctable under that rule."  See United States v. Munoz, 2014 WL 2566263, *1 (E.D.N.Y. June 6, 2014).

Even if the Court had jurisdiction to entertain Defendant's motion on the merits, the Court would deny the motion for the following reasons:

1) The Court sentenced the Defendant to a term of imprisonment which was 33 months below the (lowest end of the) stipulated guidelines range (of 121 to 151 months) which the Defendant agreed to in his Plea Agreement.  He waived his right to appeal or collaterally attack the term of his agreed to imprisonment.  See Plea Agreement at 5 ("It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 121 to 151 months' imprisonment.")  See United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993) ("In no circumstance, however, may a

3

defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement.  Such a remedy would render the plea bargaining process and the resulting agreement meaningless.")

2)   Before imposing the sentence, the Court considered thoroughly the submissions (oral and written) from counsel and the Defendant, including Defense counsel's arguments regarding sentencing disparities.  See, e.g., Sent. Hr'g at 25:21-27:14.  In imposing the sentence, the Court stated: "I think this sentence is appropriate given the enormity or I should say the seriousness [of the offense.]"  Id. at 40:20-21.  "Mr. Perez and others impersonated legitimate cellphone account holders and unlawfully used their identities and obtained electronic devices that were charged to legitimate account holders . . . . [T]he scheme affected in excess of 300 individual victims and one corporate victim."  Id. at 8:5-11.  "It's also, in my estimation, extensive, but the seriousness of the offense is in that this is a crime of these times.  So one thing that is clear to me is that this victim and other victims have been caused great anxiety, stress, emotional pain, in some cases illness . . . and not the least reason for which is that these are people who in this case, and I suspect this is - - if you read all these letters you will see that people are just shocked. They're not necessarily that sophisticated with phones, with identity, with theft.  They become involved and aware when someone sends them a letter.  Perhaps, as in the case of the letter that I read, saying you owe me money, and the account in your name has been debited and you owe us this money, causing people great anxiety and stress.  **So this is a very serious offense**.  Also, I am imposing the 88-month sentence respecting the needs for punishment and deterrence, general and specific.  I have also considered the nature and circumstances of the offense, and the history and . . . I do believe that [this crime

was] extensive in that lasted 2 [and ½] years or so, and also the history and characteristics of Mr. Perez . . . I think the sentence also protects the public from further crimes of Mr. Perez . . . ." Id. at 40:21-42:4 (emphasis added).

3) The Court properly reviewed and considered the victim statements it received in this case.  Among other things, the Court stated: "Having read their submissions, written submissions, one empathizes with them because they have had mental anguish, I guess fearfulness as a result or insecurity as a result of someone taking their identity, and I can very well appreciate why they were so concerned and are so concerned." Id. at 7:7-11. Of the 8-10 letters the Court received, the Court read one "from beginning to end because I - - and hopefully, although of course it's one person, can't exactly capture everyone, but you can get the gist, I think, of the pain that victims have suffered." Id. at 31:19-22. (COURT: "So this is a victim who writes: I have been tremendously taken advantage of and have suffered damages as a result.  I am a 71-year-old widow.  I have had diabetes for 20 years.  I have my simple but lonely life.  I live alone.  I do not have internet.  I do not have an email.  I do have a flip phone, though.  I drive into town to my bank for all my financial dealings because that's really all I have ever known.  I only own one credit card . . . I opened [a] letter from Capital One saying that a credit card account may have been fraudulently opened in my name . . . I looked at these exorbitant transactions . . . $625.10 ticket to a Chris Brown concert, and I began to panic . . . Capital One claimed I opened the account and I would remain liable even though they originally flagged a possible identity theft." Id. at 31:23-33:8)

   Upon my reading of that letter, the Defendant and Defense counsel objected that the offenses in that letter were not committed by the Defendant.  (DEFENSE COUNSEL FLORIO: "Your Honor, I'm sorry to interrupt you, but we wanted to address what was in

that one particular letter about the Chris Brown concert." DEFENDANT: "These actions [e.g., the purchase of the ticket for the Chris Brown concert] were not mine, your Honor." Id. at 35:13-17.) The Court advised the parties that it was "not vouching for it, I'm not saying that it's entirely true, what I would say about that letter is I would agree with the person who wrote it that says actions have consequences." Id. at 35:22-24.

4) With regard to the sentencing enhancement for complex schemes or sophisticated means, the Court notes that the Defendant agreed to such an enhancement in his Plea Agreement. ("Pursuant to U.S.S.G. § 2B1.1(b)(10)(C), two levels are added because the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." Plea Agreement at 2.) And, the Defendant did not object to the enhancement in the Presentence Report. (COURT: "So the first question is for Mr. Perez and his counsel, whether they have had the opportunity to read and discuss the presentence investigation report, the addendum and the sentencing recommendation with one another." DEFENSE COUNSEL FLORIO: "Yes, your Honor, I have provided Mr. Perez a copy of the probation report, we have discussed it in detail, as well as the addendum and the recommendations of probation." COURT: "Mr. Perez, you went over that presentence investigation report with your attorney?" DEFENDANT: "Yes, your Honor." COURT: "Do either of you have any remaining objections to the presentence report?" DEFENSE COUNSEL FLORIO: "No, objections, your Honor." DEFENDANT: "No, your Honor." COURT: "I should ask this question, it may be inherent in some of the others, was there anything that the defense wanted to present testimony about today with respect to this hearing, any fact issues as opposed to argument on behalf of the defense by defense counsel and by Mr. Perez?" DEFENSE COUNSEL FLORIO: "No, your Honor." DEFENDANT: "No, your Honor." Sent. Hr'g

at 16:15-17:11.)  The Court found the enhancement was appropriate.  (COURT: "So I'm going to adopt the findings of fact in the presentence report unless defense counsel has any further objection."  DEFENSE COUNSEL FLORIO: "No, your Honor."  COURT: "Or Mr. Perez."  DEFENDANT: "No, your Honor."  Id. at 31:9-14.)

5)  Over a two year period, the Defendant stole the identities of over 300 persons; he breached those persons' cellphone provider accounts; individual cellphone users lost service for a period of time; and the cellphone provider incurred a huge loss. Unauthorized phones were picked up from a multitude of stores in several states, in addition to phones that were shipped to more than 50 addresses.  **Clearly, and without any doubt, the enhancement for sophisticated means applies.**  See United States v. Jackson, 346 F.3d 22, 25 (2d Cir. 2003) (sentence enhancement merited where defendant used "hotels and courier services to take delivery of fraudulently obtained goods, [used] prepaid phone cards to prevent tracking of his activities, and [manipulated] victims' credit lines and billing addresses.").

## IV.   Conclusion & Order

Defendant Perez's motion [#94] is respectfully denied.

Dated:  New York, New York
         October 3, 2022

_Richard M. Berman_
_____
**RICHARD M. BERMAN, U.S.D.J.**